# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

H.L. ROWLEY, individually, and
as Representative for the Estate of
SANTANA E. ROWLEY,

       Plaintiff,

vs.                                                                          No. CIV 19-0683 JB/JFR

STATE OF NEW MEXICO HUMAN SERVICES
DEPARTMENT; DAVID SCRASE, Secretary for
the Human Services Department, individually and
in official capacity; BRENT EARNTEST, former
Secretary for Human Services Department,
individually and in official capacity; STATE OF
NEW MEXICO CHILDREN, YOUTH AND
FAMILIES DEPARTMENT; BRIAN BLALOCK,
Secretary for the Children, Youth and Families
Department, individually and in official capacity;
MONIQUE JACOBSON, former Secretary for
Children, Youth and Families Department
individually and in official capacity; RACHEL
KOLMAN, employee of State of New Mexico
Children, Youth and Families Department,
individually and in official capacity; MICHELLE
RAEL, employee of State of New Mexico Children,
Youth and Families Department, individually and in
official capacity; CORRINA PACHECO, employee
of State of New Mexico Children, Youth and
Families Department, individually and in official
capacity; CHRISTY OLSEN, employee of State of
New Mexico Children, Youth and Families
Department, individually and in official capacity;
KRISTY ROYBAL, employee of State of New
Mexico Children, Youth and Families Department,
individually and in official capacity; MELISSA
MONTOYA, employee of State of New Mexico
Children, Youth and Families Department,
individually and in official capacity; MICHAEL
TAFOYA and WIFE LISA TAFOYA, employees
or contractor of State of New Mexico Children,
Youth and Families Department; KATHY
COOMBS and WIFE DARAH SPENCER,

spouse of Kathy Coombs, employee or contractor of
State of New Mexico Children, Youth and Families
Department, individually and in official capacity;
ALAN MAESTAS, in individual capacity and as
employee or contractor of Children, Youth and
Families Department; THE OFFICE OF THE
EIGHTH JUDICIAL DISTRICT ATTORNEY;
DONALD GALLEGOS, Eighth Judicial District
Attorney, individually and official capacity; TAOS
COUNTY; TAOS COUNTY SHERIFF'S OFFICE;
JERRY HOGREFE, Taos County Sheriff,
individually and in official capacity; SHERIFF'S
OFFICERS DOES #1-4, names unknown,
individually and in their official capacities; THE
TAOS NEWS; ROBIN MARTIN, Owner of the
Taos News; STACI MATLOCK, Editor of the Taos
News; SAGEBRUSH INN; JAMES HAIMSON,
former owner of the Sagebrush Inn; JARED
STEINBERG, former owner of the Sagebrush Inn,
and JP TAOS LLC, current owner of Sagebrush
Inn,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court, under 28 U.S.C. § 1915 and rule 12(b)(6) of the

Federal Rules of Civil Procedure, on: (i) the Plaintiff's Civil Rights Complaint Pursuant to

42 U.S.C. § 1983, filed July 24, 2019 (Doc. 1)("Complaint"); and (ii) the Plaintiff's Response to

Order Partially Granting and Partially Denying, filed June 2, 2021 (Doc. 20)("Response").

Plaintiff H.L. Rowley appears pro se.   For the reasons set out below, the Court will: (i) dismiss

the First Cause of Action pursuant to 42 U.S.C. 1983 against (a) Defendant Taos News; (b) its

owner, Defendant Robin Martin; (c) its editor, Defendant Staci Matlock; (d) Defendant the

Sagebrush Inn; (e) its former owners, Defendants James Haimson and Jared Steinberg; and (f) its

current owner, Defendant JP Taos LLC, without prejudice for failure to state a claim upon which

relief can be granted, because Rowley does not allege that they acted under color of state law; (ii)

- 2 -

dismiss Rowley's § 1983 claims against Defendants State of New Mexico Human Services Department ("NMHSD"), the State of New Mexico Children, Youth and Families Department ("CYFD") and their current and former employees whom Rowley named as Defendants in their official capacities, because the State, its agencies and its employees in their official capacities, do not qualify as "persons" under § 1983; (iii) dismiss Rowley's § 1983 claims against Defendant Eighth Judicial District Attorney Donald Gallegos, because prosecutors are entitled to immunity in the performance of their prosecutorial functions; (iv) dismiss Rowley's § 1983 claims against Defendant Taos County for failure to state a claim, because Rowley does not allege facts showing that a Taos County policy or custom was a motivating force behind the alleged constitutional violations; (v) dismiss Rowley's claims against Defendant Taos County Sheriff's Office ("TCSO"), because it is not a separate suable entity; (vi) dismiss Rowley's claims against NMHSD and the CYFD for violations of the Adoption and Safe Families Act[1] ("ASFA"), because Rowley has not identified the specific provisions of the ASFA that NMHSD and CYFD allegedly violated, and, consequently, has not given the Defendants fair notice of what Rowley's claim is; (vii) dismiss Rowley's claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, because Rowley has not alleged that: (a) Rowley or Santana have a qualifying disability; (b) Rowley requested a modification in policies, practices, or procedures; or (c) such a request was reasonable; (viii) dismiss Rowley's claims pursuant to Section 504 of the Rehabilitation Act, because Rowley does not allege that Rowley or Santana have a disability as the Rehabilitation Act, 29 U.S.C. § 705, defines; (ix) dismiss Rowley's conspiracy-to-violate-civil-rights claim against all Defendants pursuant to 42 U.S.C. § 1985(3), because there are no factual allegations tending to

---

[1]Pub. L. No. 105-89, 111 Stat. 2115 (November 19, 1997).

show agreement and concerted action between the Defendants; and (x) deny Rowley's request to appoint counsel.

## FACTUAL BACKGROUND

Rowley states: "This action is brought by HL Rowley, *pro se*, Mother and Personal Representative of the Estate of Santana E. Rowley ('Mom'), for civil rights violations which lead to the violent death of minor child Santana Elvira Rowley in CUFD custody on 24 July 2016." Complaint ¶ 1, at 2.   "Santana's death in the wee hours of Taos Fiestas Sunday, 24 July 2016, was ruled suicide by self-inflicted gunshot by the Taos County Sheriff's Office (TCSO) and the NM Office of the Medical Investigator (OMI)."   Complaint ¶ 60, at 21.

The Defendant [CYFD] employees allegedly:

> violate[d] Santana's fundamental rights by, including but not limited to: failing to provide appropriate medical and behavioral health care for existing conditions and the trauma they compounded, failing to keep Santana safe, failing to provide stability, failing to ensure fundamental privacy; separating Santana from her Mom, her brother, her family, her friends, her spirituality her cultural activities, her medical/BH care team, her educational values, her home, her pets; throwing Santana into the gutter with criminals.

Complaint ¶ 18, at 9.   Regarding Defendants Office of the Eighth Judicial District Attorney and District Mr. Gallegos,

> in Santana's 2014 JQ case, Gallegos prosecuted her unevenly, did not provide Mom with GAL assistance in and did not provide victims services; in Santana's CYFD case, Gallegos coordinated with CYFD to falsely accuse Rowley and did not consult with Mom regarding prosecution of Ron Thomas, thus depriving Mom and the Thomas family the opportunity for continued good relations, perhaps via the restorative justice program.

Complaint ¶ 20, at 10.   Taos County Sheriff Office and Sheriff Jerry Hogrefe

> completely failed to perform even basic law enforcement procedures at the scene of Santana's death; released Santana's car to tow yard immediately, thereby preventing OMI and competent investigators from conducting a professional investigation of Santana's death; endangered Santana and other adolescent lives

with a policy of refusing to take missing-persons calls until a child has been missing for twelve hours; conspired with CYFD to conceal facts and evidence of Santana's death; TCSO deputies made illegal entry into the locked and posted Rowley family farm on Easter Sunday of 2017, traumatizing Mom, who suffers from PTSD . . . TCSO has also failed to provide documents responsive to two IPRA requests, one of which was regarding suicide death records in Taos County in 2016.

Complaint ¶ 21, at 10-11.   Defendant Taos News "published the private fact that Santana was in CYFD custody the morning after her death in the online edition of the newspaper."   Complaint ¶ 22, at 11.   Defendant Sagebrush Inn "knew Santana was being bullied, harassed, threatened, and abused by an older male co-worker and failed to provide basic workplace protections or remedies." Complaint ¶ 23, at 11.

## PROCEDURAL BACKGROUND

Rowley's seventy-one-page Complaint lists thirty-three Defendants and asserts the following : (i) "First Cause of Action (Against All Defendants For Violations of The Fourteenth Amendment to the United States Constitution)"; (ii) "Second Cause of Action (Against HSD/CYFD and Taos County/TCSO Actors for Violation of The First Amendment to the United States Constitution)"; (iii) "Third Cause of Action (Against CYFD/HSD and Taos County/TCSO Defendants for Violations of the Civil Rights act of 1964)"; (iv) "Fourth Cause of Action of Action (Against HSD/CYFD Actors for Violations of the Adoption and Safe Families Act)"; (v) "Fifth Cause of Action (Against HSD/CYFD, Taos County/TCSO, and DA Gallegos for Violations of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act)"; and (vi) "Sixth Cause of Action (Against All Defendants for Conspiracy to Violate Civil Rights)."   Complaint at 46, 62, 64, 66, 67 (no paragraph numbering).

Rowley asserts their First Cause of Action "Against All Defendants For Violations of The Fourteenth Amendment to the United States Constitution."   Complaint at 46 (no paragraph

numbering).   Defendants "CYFD/HSD Failed to Provide Santana's Medical and Behavioral Health Care," and "Failed to Keep Santana Safe in State Custody."   Complaint ¶¶ 148-155, at 47-50.   Rowley alleges that CYFD violated "Fundamental Rights to Parent, to Child Custody, and to Control Child-Rearing and Education," and "Right to Familial Association and Determination of Family Composition," Complaint ¶¶ 156-174, at 50-55.   Rowley also asserts that Defendants CYFD, Taos News and TCSO Officers violated "Fundamental Privacy Rights" and "Fundamental Interest in Good Name."   Complaint ¶¶ 175-183, at 55-57.   Finally, according to Rowley, Defendants violated Rowley's due process rights and Santana's equal protection rights: (i) the CYFD Defendants by not allowing Santana to talk with Rowley, not admitting Rowley's evidence, not disclosing evidence to Rowley before hearings, and not considering Rowley's motions; (ii) Defendant Alan Maestas, "who was Santana's Youth Attorney in the CYFD case," by misleading Santana; (iii) Taos County Sheriff's Office by its response to Santana's suicide; (iii) Mr. Gallegos for his prosecution of Rowley and Santana; (iv) Sagebrush Inn by "knowingly allowing hostile, threatening, abusive and intimidating behavior" by one of Santana's co-workers; and (v) Taos News by "disclosing [Santana's] confidential information publicly."   Complaint ¶¶ 184-199, at 57-61.

Rowley's Second Cause of Action asserts that CYFD and NMHSD violated Rowley and Santana's First Amendment right to freedom of religion by subjecting Santana "to the religious beliefs of devout Christians" instead of providing her with "opportunities or activities to continue the spiritual path of her upbringing."   Complaint ¶¶ 201-209, at 62-63.   It also asserts that CYFD, HSD, Taos County and the Taos County Sheriff's Office violated Rowley and Santana's First Amendment right to petition the government for redress of wrongs, by retaliating against Rowley and Santana for Rowley's filing of civil rights claims.   See Complaint ¶¶ 210-211, at 63-64.

Rowley's Third Cause of Action alleges violations of "the Civil Rights Act of 1964," because: (i) CYFD "labeled" it an "abusive act" when Rowley parked their "truck to block the driveway so that Santana was unable to drive her car off the property during the night," and Rowley could "find no instance anywhere of a white male parent being accused of abuse or neglect for protecting his adolescent daughter from the dangers of sneaking out in the night"; (ii) "CYFD and TCSO failed to respond to Mom's pleas for help, and instead targeted Mom with repeated and escalating civil rights violations"; (iii) Mr. Gallegos and the TCSO "discriminated against Santana on the basis of race and sex in the 2014 prosecution" of "Santana, a Hispanic female" but not prosecuting the white males who were also involved after "Santana and the boys [took] Mom's car and [drove] to Colorado"; and (iv) "Mom has been accused, harassed, and subjected to serious emotional distress by repeated lies and misrepresentations by [NM]HSD/CYFD employees, by DA Gallegos, and by TCSO, while under oath and not." Complaint ¶¶ 213-220, at 65-67. Rowley's Fourth Cause of Action alleges "Violations of the Adoption and Safe Families Act" because "[c]ontrary to the ASFA, CYFD/[NM]HSD: prevented Santana from her interacting with her family, failed to reunite her with her family, and failed to keep Santana safe." Complaint ¶ 225, at 67.   Rowley's Fifth Cause of Action alleges "Violations of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act," because Defendants "CYFD, [NM]HSD, the District Attorney, and TCSO" discriminated Rowley and Santana because: (i) the "Defendants . . . den[ied] them the opportunity to fully participate . . . program"; (ii) the "Defendants [NM]HSD/CYFD denied Santana's medical and behavioral health care"; and (iii) the

> Defendants . . . fail[ed] to respond to calls for help; fail[ed] to provide appropriate accommodations . . . treating Mom as less of a person based on disability increasingly targeting Mom for harassment and prosecution as Mom's disability progresses and knowingly exacerbating those disabilities by their intentional, purposeful, and coordinated actions to deprive Mom of constitutional rights.

Complaint ¶¶ 230-232, at 68.   Rowley's Sixth Cause of Action alleges "Conspiracy to Violate Civil Rights," stating that "the elements of conspiracy have been set forth in previous sections and does not wish to vex the court with further repetition."   Complaint ¶ 237, at 69.

Rowley also asks the Court to appoint counsel, because: (i) Rowley "is disabled, low-income, and unable to afford counsel"; (ii) "[o]ver the past three years, Rowley has sought assistance of numerous attorneys without success"; (iii) "Rowley is unable to present this case competently.   Rowley has no training in civil procedure, discovery, jury trials, or any aspect of a federal Complaint"; (iv) "[d]ue to disability, Rowley is unable to function at the level, or reliably enough, to fully follow and maintain a complex federal case"; and (v) "Rowley is neither qualified nor able to competently pursue justice for Santana and would so appreciate any assistance this Court may see fit to grant."   Application for Appointment of Counsel at 1, filed August 6, 2019 (Doc. 7).

The Honorable Judge John F. Robbenhaar, United States Magistrate Judge for the United States District Court for the District of New Mexico, denied Rowley's Application for Appointment of Counsel and notified Rowley that: (i) "[m]any of the events giving rise to Plaintiff's claims occurred before Daughter's suicide in July 2016.   It appears that those claims pursuant to 42 U.S.C. § 1983, the ADA and the Rehabilitation Act which are based on events occurring before July 2016 are barred by the statute of limitations"; (ii) "[m]any of the allegations in the Complaint are conclusory"; (iii) "[t]he Court does not have jurisdiction over Plaintiff's 42 U.S.C. § 1983 damages claims against Defendants State of New Mexico Human Services Department, State of New Mexico Children, Youth and Families Department, and State Officials because they are immune from damages"; (iv) the "Plaintiff fails to state a claim against

- 8 -

Defendants the Office of the Eighth Judicial District Attorney and Eighth Judicial District Attorney Donald Gallegos," because the alleged actions "cast them in the role of an advocate initiating and presenting the government's case, they are entitled to absolute immunity"; (v) "[t]he Complaint fails to state a claim under 42 U.S.C. § 1983 against Defendant Taos County," because "there are no non-conclusory factual allegations establishing that a Taos County policy or custom was the moving force behind any alleged constitutional violations"; (vi) the "Plaintiff fails to state a claim against Defendant Taos County Sheriff's Office because it is not a separate suable entity"; (vii) the "Plaintiff fails to state a claim against Defendants the Taos News and its owner Robin Martin and its editor Staci Matlock, the Sagebrush Inn and its former owners James Haimson and Jared Steinberg and its current owner JP Taos, LLC," because there "are no non-conclusory, factual allegations that [those Defendants] are state actors or conspired with government actors"; (viii) "Plaintiff has not stated claims pursuant to the Americans with Disabilities Act and Section 504 of the Rehabilitation Act," because Rowley "has not set forth sufficient factual allegations showing [Rowley] is a qualified individual with a disability under the ADA or the Rehabilitation Act . . . Nor has [Rowley] alleged sufficient factual allegations showing that Rowley was discriminated against by reason of [Rowley's] disability"; and (ix) the "Plaintiff fails to state a claim for conspiracy pursuant to 42 U.S.C. § 1983," because Rowley "has not, for the most part, alleged specific facts showing an agreement amongst those Defendants."   Memorandum Opinion and Order Granting Motion to Proceed in forma pauperis, Denying Motion to Appoint Counsel, and Granting Leave to File an Amended Complaint at 3-6, filed March 12, 2020 (Doc. 10)("Order for Amended Complaint").   Magistrate Judge Robbenhaar granted Rowley leave to file an amended complaint and notified Rowley that failure to timely file an amended complaint may result in dismissal of this case.   See Order for Amended Complaint at 12.

Rowley requested a 60-day extension to file an amended complaint because of Rowley's disability and health issues.   See Request for A.D.A. Accommodation of Extension of Deadline, filed March 18, 2020 (Doc. 11).   Magistrate Judge Robbenharr granted Rowley an extension until June 2, 2020, and notified Rowley that failure to file an amended complaint by June 2, 2020, may result in dismissal of this case.   See Order Granting Motion to Extend Deadline, filed March 25, 2020 (Doc. 12).

Rowley filed a second motion to appoint counsel and a second motion for a 90-day extension of time to September 1, 2020, to file an amended complaint because of health issues and the Covid-19 pandemic.   See Second Application for Appointment of Counsel; Second Request for A.D.A. Accommodation of Extension of Deadline, filed May 29, 2020 (Doc. 14).   Magistrate Judge Robbenhaar denied Rowley's Second Application for Appointment of Counsel and granted Rowley's Second Request for A.D.A. Accommodation of Extension of Deadline with the notice that failure to timely file an amended complaint may result in dismissal of this case.   See Order Granting Motion to Extend Deadline and Denying Motion to Appoint Counsel, filed July 9, 2020 (Doc. 15).

Rowley filed another motion for an extension of time to file an amended complaint, because of severe health issues, and for appointment of counsel.   See Request for A.D.A. Accommodation of Extension of Time and Appointment of Counsel, filed September 1, 2020 (Doc. 16).   Magistrate Judge Robbenhaar denied Rowley's third request for appointment of counsel and granted Rowley's request for an extension until January 24, 2021, to file an amended complaint with the notice that failure to timely file an amended complaint may result in dismissal of this case.   See Order Granting Motion to Extend Deadline and Denying Motion to Appoint Counsel, filed November 5, 2020 (Doc. 17).

- 10 -

Rowley filed another motion for the appointment of counsel and another extension of time to file an amended complaint because of health issues. <u>See</u> Response to Memorandum Opinion and Order and Request for Appointment of Counsel and Extention of Time to File Amended Complaint, filed January 25, 2021 (Doc. 18)("Fourth Request").   Rowley also addresses some of the issues Magistrate Judge Robbenhaar raised in his Order for Amended Complaint by: (i) citing case law to show that Rowley may represent the Estate, because Rowley "is the sole beneficiary and the Estate has no creditors"; (ii) stating that the "Plaintiff is not certain to what extent this is a § 1983 claim"; (iii) stating that, "[b]ecause this Complaint is to address a long series of continuing violations by State and County actors, the statute of Limitations for most, if not all, of the claims Complained of have not yet even begun because the campaign of harassment continues"; (iv) stating that the "Plaintiff believes the Court does have jurisdiction over defendants because any qualified immunity that may be applicable is waived due at least and in part to Defendants' acts or omissions which demonstrated deliberate indifference to Mom and Santana"; and (v) citing "<u>Gazette v. City of Pontiac</u>, 41 F.3d 1061, 1064 (6th Cir. 1994) which sets the standard for evaluating stated claims."   Fourth Request at 2-7.

Magistrate Judge Robbenhaar denied Rowley's Fourth Request for appointment of counsel and granted Rowley thirty days to file an amended complaint, again notifying Rowley that failure to timely file an amended complaint may result in dismissal of this case. <u>See</u> Order Granting Motion to Extend Deadline and Denying Motion to Appoint Counsel, filed May 3, 2021 (Doc. 19)("Order Granting Fourth Request for Extension").   Instead of filing an amended complaint, Rowley filed a Response to Magistrate Judge Robbenhaar's Order Granting Fourth Request for Extension, in which Rowley: (i) "thanks the Court for extension of time in which to file Amended Complaint.   Plaintiff is ever less capable to do so'", and (ii) "further begs the Court to please again

- 11 -

consider appointment of Counsel."   Response at 1-2.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes their pleadings liberally and holds them "to a less stringent standard than [that applied to] formal pleadings drafted by lawyers." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).   "[I]f the Court can reasonably read the pleadings to state a valid claim on which [the plaintiff] could prevail, it should do so despite failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." Hall v. Bellmon, 935 F.2d at 1110.   The Court, however, will not "assume the role of advocate for the pro se litigant." Hall v. Bellmon, 935 F.2d at 1110.   "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." Ogden v. San Juan Cnty., 32 F.3d 452, 455 (10th Cir. 1994).

## LAW REGARDING SUA SPONTE DISMISSAL UNDER RULE 12(b)(6)

Rule 12(b)(6) authorizes the court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).   A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)("Twombly").   A district court should not dismiss a pro se complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6). While dismissal under rule 12(b)(6) generally follows a motion to dismiss, a court's sua sponte dismissal of a complaint under rule 12(b)(6) is not an error if it is "'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" Curley v. Perry, 246 F.3d at 1282 (quoting Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991)).

- 12 -

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action, and it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 'did not create any substantive rights, but merely enforce[s] existing constitutional and federal statutory rights . . . .'") (second alteration added by Nelson v. Geringer)(quoting Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1197 (10th Cir. 1998))). Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights. To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988). The Court has noted:

> [A] plaintiff "must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F.Supp.2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(second alteration in original)(quoting Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. March 30, 2010)(Browning, J.)).

The Supreme Court of the United States of America has clarified that, in alleging a § 1983 action against a government agent in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Consequently, there is no respondeat superior liability under § 1983. See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to Bivens[2] and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Entities cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 689 (1978). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The United States Court of Appeals for the Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006). The Tenth Circuit also

---

[2]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), the Supreme Court held that a violation of the Fourth Amendment of the Constitution of the United States "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." Bivens, 403 U.S. at 389. Thus, in a Bivens action, a plaintiff may seek damages when a federal officer acting in the color of federal authority violates the plaintiff's constitutional rights. See Bivens, 403 U.S. at 389. See also Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog" to § 1983 actions).

recognizes that Ashcroft v. Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.   See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).   The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."   Ashcroft v. Iqbal, 556 U.S. at 676. The Tenth Circuit in Dodds v. Richardson states:

> Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

Dodds v. Richardson, 614 F.3d at 1199 (quoting 42 U.S.C. § 1983). The Tenth Circuit has noted, however, that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concluded that Ashcroft v. Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200.   More specifically, the Tenth Circuit has recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or

approval of such misconduct.'" Dodds v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

The specific example that the Tenth Circuit uses to illustrate this principle is Rizzo v. Goode, where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).  The Tenth Circuit notes that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "'crush the nascent labor organizations.'"  Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

## LAW REGARDING JUDICIAL AND PROSECUTORIAL IMMUNITY

Absolute immunity bars civil rights and state law claims against judicial officers acting as judges.  See Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); Christensen v. Ward, 916 F.2d 1462, 1473-76 (10th Cir. 1990).   It is well settled that the doctrine of judicial immunity applies to 42 U.S.C. § 1983 actions.   See Van Sickle v. Holloway, 791 F.2d 1431, 1434-35 (10th Cir. 1986).  Absolute immunity bars all suits for money damages for acts made in the exercise of judicial discretion. See Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006).

The Supreme Court has recognized absolute immunity for officials whose special functions or constitutional status require complete protection from suit.   See Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).   The purpose of absolute judicial immunity is

> to benefit the public, "whose interest is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." The Supreme Court has recognized that "the loser in one forum will frequently seek another, charging the participants in the first with unconstitutional animus."

Therefore, absolute immunity is necessary so that judges can perform their functions without harassment or intimidation.

Van Sickle v. Holloway, 791 F.2d at 1434-35 (quoting Butz v. Economou, 438 U.S. 478, 512 (1978)).

Prosecutors are entitled to immunity in the performance of their prosecutorial functions. See Imbler v. Pachtman, 424 U.S. 409, 430 (1976). The common law has long recognized that prosecutors must be given immunity from civil liability's chilling effects. See Burns v. Reed, 500 U.S. 478, 485 (1991). Prosecutors are immune absolutely from damages for their advocacy and activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. at 430. This immunity includes initiating a prosecution, presenting the State's case, evaluating evidence, and determining whether probable cause exists. See Nielanderv. Bd. of Cty. Comm'rs., 582 F.3d 1155, 1164 (10th Cir. 2009); Pfeiffer v. Hartford Fire Ins. Co., 929 F.2d 1484, 1490 (10th Cir. 1991).

## LAW REGARDING 42 U.S.C. § 1985(3)

Claims under 42 U.S.C. § 1985 are less common than claims under § 1983. Section 1985 pertains to the prohibition of conspiracies which interfere with civil rights. See 42 U.S.C. § 1985. The Supreme Court recognizes "five broad classes of conspiratorial activity" that § 1985 prohibits. Kush v. Rutledge, 460 U.S. 719, 724 (1983). "Three of the five broad categories . . . relate to institutions and processes of the Federal Government." Kush v. Rutledge, 460 U.S. at 724. The fourth and fifth classes of § 1985 claims apply to conspiracies to "obstruct the course of justice in state courts," and to "go in disguise on the highway or in the premises of another." Kush v. Rutledge, 460 U.S. at 724 (internal quotation marks omitted). Both of these latter categories require an "intent to deprive their victims of the equal protections of the laws," which means that there must be some "'racial, or perhaps otherwise class-based, invidiously discriminatory animus' behind the conspiratorial action." Kush v. Rutledge, 460 U.S. at 724, 726 (quoting Griffin v. Brekenridge, 403 U.S. 88, 102 (1971)). See Campbell v. Amax Coal Co., 610 F.2d 701, 702 (10th Cir. 1979)("[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985.").

To succeed on a § 1985 claim, a plaintiff must prove a conspiracy. See Dixon v. City of Lawton, Okla., 898 F.2d 1443, 1447 (10th Cir. 1990). To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(discussing conspiracy under § 1983). "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and

concerted action."   Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).

The Tenth Circuit has held that it is error to "precondition consideration of a plaintiff's § 1985(3) claim upon the finding of § 1983 liability."   Dixon v. City of Lawton, Okla., 898 F.2d at 1447 (10th Cir. 1990).

> Although neither § 1983 nor § 1985(3) create any substantive rights, a § 1983 claim generally describes a substantive violation of a right secured by the Constitution or laws, whereas a § 1985(3) claim generally describes a conspiracy of two or more persons for the purpose of depriving of another of equal protection of the laws or equal privileges and immunities under the laws.

Dixon v. City of Lawton, Okla., 898 F.2d at 1447.

To state a claim under § 1985(3), a plaintiff must show: (i) a conspiracy, motivated by racially discriminatory animus; (ii) to deprive the plaintiff of equal protection or equal protections of the laws; (iii) an act in furtherance of the conspiracy; and (iv) an injury or deprivation resulting therefrom.   See Paris v. Sw. Bell Tel. Co., 94 F. App'x 810, 815 (10th Cir. 2004)(unpublished)[3]; Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).   "Conclusory allegations that the defendants acted in concert or conspired, without specific factual allegations

---

[3] Paris v. Sw. Bell Tel. Co.is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court concludes that Paris v. Sw. Bell Tel. Co. has persuasive value with respect to a material issue and will assist the Court in its disposition of this Order.

to support such assertions, are insufficient to state a claim under § 1985(3)." Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, 2010 WL 1608884, at *12 (citing Merritt v. Hawk, 153 F. Supp. 2d 1216, 1225 (D. Colo. 2001)(Weinshienk, J.).

The Tenth Circuit has stated that § 1985(3) is intended "to provide redress for victims of conspiracies impelled by a commingling of racial and political motives." Brown v. Reardon, 770 F.2d 896, 907 (10th Cir. 1985). "[I]n the absence of allegations of class based or racial discriminatory animus, the complaint fails to state a claim under § 1985." Campbell v. Amax Coal Co., 610 F.2d at 702. The Tenth Circuit consistently has dismissed § 1985(3) claims devoid of racial, discriminatory animus. For example, in Paris v. Sw. Bell Tel. Co., the Tenth Circuit held that the plaintiff's hostile-work-environment claim failed, because she did not show racial discriminatory animus on the part of the alleged conspirators. See 94 F. App'x at 815.

In Martinez v. Martinez, the plaintiff alleged that M. Martinez, her ex-husband, Lynda Latta, her ex-husband's attorney, and the Honorable Elizabeth Whitefield, the judge who presided over the Martinezes' divorce in state court, conspired against her to deprive her of her rights guaranteed under the Equal Protection Clause. See 2010 U.S. Dist. LEXIS 38109, 2010 WL 1608884, at *1, *26. The Court noted:

The entirety of the constitutional claims appear to be these:

> 14.    In the Court's Defendant 4's [i.e., Judge Whitefield's] ruling to dismiss this case against Plaintiff first of all is a violation of Federal Rule 60(b)(4) because the Court lacked jurisdiction over the subject matter and that dismissal, for lack of prosecution, which conduct was done as a state actor under color of law by [Judge Whitefield] and in conspiracy with [Ms. Latta] on behalf of [M. Martinez], to achieve these ends. [Ms. Latta] is included in this legal process, entered into knowingly and fraudulently to achieve the illegitimate end of depriving Plaintiff of her due civil rights by [Judge Whitefield's] void ruling, which rights are afforded by USC 42 §§ 1983 and 1985(3) to a fair hearing of the property as she has attempted to litigate for these last years.

- 20 -

15.     [Ms. Latta and Judge Whitefield] are participants with [M. Martinez] and have conspired to keep Plaintiff at bay in obtaining her rights to this undivided property by engaging improper courts and attempts to harass and exhaust Plaintiff of her financial resources . . . .

. . . .

17.     The Fourteenth Amendment states thus: "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law . . .   And further in the Fifth Amendment "the Bill of Rights protects against abuse of government -- the 'double jeopardy' clause seems to be applied here, because Plaintiff's same former case 95-2963 was voluntarily dismissed by Plaintiff without prejudice in 2003, and resurrected from the dead improperly by [M. Martinez, Ms. Latta, and Judge Whitefield] on August 28, 2007 by Motion.

18.     [Judge Whitefield] attempts to adjudicate a new dismissal of this same closed case by dismissing it again against Plaintiff for lack of prosecution  and  would attempt by doing so, to take away her right to adjudicate it elsewhere -- this would be a gross violation for Plaintiff from [Judge Whitefield] and finds into the double jeopardy type of thinking easily -- a double dismissal, one legitimate by Plaintiff and one illegitimate (reopened by Defendants by Motion) after this dismissal, and done (the second) with intention by [M. Martinez and Ms. Latta] and especially with the power of [Judge Whitefield], to attempt to deprive Plaintiff of her due process rights of hearing and eliminating her possibility to adjudicate her claim because [Judge Whitefield's] ruling would then be the second dismissal on the basis of lack of prosecution which then adjudicates a case and it could not be brought again by this Plaintiff.

Martinez v. Martinez, 2010 U.S. Dist. LEXIS 38109, 2010 WL 1608884, at **24-25 (alterations in opinion).   The Court dismissed the § 1985 claim, reasoning that the plaintiff "makes no allegation of discriminatory animus by [the defendants]" and that "there is nothing more than a conclusory allegation of conspiracy, lacking any underlying facts." 2010 U.S. Dist. LEXIS 38109, at *27.   The Court noted that "[n]o alleged facts touch on any individual's race, political or

religious affiliation, or any other categorization against which the Defendants might hold a discriminate animus." 2010 U.S. Dist. LEXIS 38109, 2010 WL 1608884, at *27.

## LAW REGARDING MONELL CLAIMS

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . .

42 U.S.C. § 1983.  The Supreme Court has recognized that "municipalities and other bodies of local government are 'persons' within the meaning of this statute."  St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988).  The Supreme Court has articulated "when a decision on a single occasion may be enough to establish an unconstitutional municipal policy."  St. Louis v. Praprotnik, 485 U.S. at 123 (citation omitted).

> First, a majority of the Court agreed that municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, "that is, acts which the municipality has officially sanctioned or ordered."  [Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)].  Second, only those municipal officials who have "final policymaking authority" may by their actions subject the government to § 1983 liability.  [Pembaur v. City of Cincinatti, 475 U.S. at 483] (plurality opinion).  Third, whether a particular official has "final policymaking authority" is a question of state law.  [Pembaur v. City of Cincinatti, 475 U.S. at 483] (plurality opinion).  Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business.  [Pembaur v. City of Cincinatti, 475 U.S. at 482-83] (plurality opinion).

St. Louis v. Praprotnik, 485 U.S. at 123.  The Tenth Circuit has explained that there are two elements that a plaintiff must show when "suing a county under section 1983 for the actions of one of its officers": (i) "a municipal employee committed a constitutional violation"; and (ii) "a

- 22 -

municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d 1313, 1318 (10th Cir. 1998)(citing Monell v. Dep't of Social Servs. Of City of New York, 436 U.S. 658, 694 (1978)). See Hinton v. City of Elwood, 997 F.2d 774, 782 (10th Cir. 1993)(citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Apodaca v. Rio Arriba Cty. Sheriff's Dep't, 905 F.2d 1445, 1447-48 (10th Cir. 1990); Watson v. City of Kan. City, 857 F.2d 690, 697 (10th Cir. 1988)). Those elements apply when the plaintiff alleges that the final policymaker's are the municipality's policy. See Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d at 1319. In Myers v. Okla. Cty. Bd. Of Cty. Comm'rs, the Tenth Circuit noted:

> The Defendants do not deny that Sheriff Sharp, as the supervising law enforcement officer, was a final policymaker with respect to the decision to enter the apartment. See [Pembaur v. City of Cincinatti, 475 U.S. at 493.] (offering sheriffs as examples of official policymakers with respect to law enforcement activities). Thus, there is no dispute in this case that the County, through Sheriff Sharp, was the 'moving force' behind the decision to enter the apartment. If that decision -- the decision to enter the apartment -- resulted in a constitutional violation, the County would be liable.

Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d at 1319.


## RELEVANT LAW REGARDING THE REHABILITATION ACT AND THE ADA

Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Section 504 thus prohibits employers from discriminating against or failing to accommodate employees who are disabled within the meaning of the Rehabilitation Act and creates a private right of action in favor of a qualified victim

- 23 -

of such discrimination.   See, e.g.,   Consol. Rail Corp. v. Darrone, 465 U.S. 624, 629, 632 (1984)(stating that § 504 does not apply only "where a primary objective of the Federal financial assistance was to provide employment," and that "it is unquestionable that [§ 504] was intended to reach employment discrimination"); McGeshick v. Principi, 357 F.3d 1146, 1149 (10th Cir. 2004)("The [Rehabilitation Act] makes available a private right of action to qualified individuals who have been subjected to discrimination by the federal government or by a program or activity receiving federal financial assistance." (citing 29 U.S.C. § 794(a); Niehaus v. Kan. Bar Ass'n, 793 F.2d 1159, 1162 (10th Cir. 1986)); Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1380 (10th Cir. 1981)(holding that § 504 creates a private right of action).   In cases of employment discrimination brought under 29 U.S.C. § 794, the Rehabilitation Act adopts "the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201 to 12204 and 12210), as such sections relate to employment."   29 U.S.C. § 794(d).   Because of this relationship, "decisions under both acts apply interchangeably to [a court's] analysis."   Vidacak v. Potter, 81 F. App'x 721, 723 (10th Cir. 2003)(unpublished).

1.     **Prima Facie Case of Disability Discrimination.**

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show: (i) that he or she is disabled under the Rehabilitation Act; (ii) that he or she is a qualified individual for the position; (iii) that the employer receives federal financial assistance; and (iv) the employer discriminated against the plaintiff.   See McGeshick v. Principi, 357 F.3d at 1150; Vidacak v. Potter, 81 F. App'x at 723.   An employer may discriminate against an employee by subjecting the employee to an adverse employment action, i.e., "acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits." Dick v. Phone Directories Co., 397 F.3d 1256, 1268 (10th Cir. 2005).  An employer can also discriminate by failing to accommodate an employee's disability, unless such an accommodation would create an undue hardship.  See 42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.

### a.   Establishing a Person is Disabled Within the Meaning of the Rehabilitation Act.

The Rehabilitation Act defines "individual with a disability" for purposes of subchapter V -- under which 29 U.S.C. § 794 falls -- as "any person who has a disability as defined in section 12102 of Title 42."  29 U.S.C. § 705(20)(B).  Accordingly, § 504 of the Rehabilitation Act adopts the ADA's definition of "disability," which, regarding an individual, means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment (as described in paragraph (3))."  42 U.S.C. § 12102(1).

"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  "[A] major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions."  42 U.S.C. § 12102(2)(B).  Accordingly, a major life activity is not confined to those activities "with a public, economic, or daily aspect."  Bragdon v. Abbott, 524 U.S. 624, 639 (1998).  Further, "[w]hether an activity is a 'major life activity' is not determined by reference to whether it is of 'central importance to daily life.'"  29 C.F.R. § 1630.2(i)(2)(quoting Toyota Motor Mfg., Ky.,

Inc. v. Williams, 534 U.S. 184, 198 (2002), superseded by statute, ADA Amendments Act of 2008,

Pub. L. No. 110-325, 122 Stat 3553 ("ADAAA")).

      As the Rehabilitation Act adopts the ADA's definition of "disability," ADA regulations

interpreting the ADA's definition are applicable to the Rehabilitation Act for § 794 purposes.   See

McGeshick v. Principi, 357 F.3d at 1150 (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534

U.S. at 198 to define "substantially limited," which relies on ADA regulations to define

"substantially limited").   ADA regulations provide "rules of construction," 29 C.F.R.

§ 1630.2(j)(1), for determining whether an impairment substantially limits an individual's major

life activity:

> (i) The term "substantially limits" shall be construed broadly in favor of expansive
> coverage, to the maximum extent permitted by the terms of the ADA.
> "Substantially limits" is not meant to be a demanding standard.
>
> (ii) An impairment is a disability within the meaning of this section if it
> substantially limits the ability of an individual to perform a major life activity as
> compared to most people in the general population.   An impairment need not
> prevent, or significantly or severely restrict, the individual from performing a major
> life activity in order to be considered substantially limiting.   Nonetheless, not
> every impairment will constitute a disability within the meaning of this section.

29 C.F.R. § 1630.2(j)(1)(i)-(ii).   The regulations underscore that the determination of

"substantially limits" is an individualized assessment and has a standard lower than that applied

before the ADAAA's passage.   29 C.F.R. § 1630.2(j)(1)(iv)("[T]he term 'substantially limits'

shall be interpreted and applied to require a degree of functional limitation that is lower than the

standard for 'substantially limits' applied prior to the ADAAA.").   Further, when making a

determination of "substantially limits," a court should not consider "the ameliorative effects of

mitigating measures" besides "ordinary eyeglasses or contact lenses."   29 C.F.R.

§ 1630.2(j)(1)(vi).   "Whether an individual's impairment 'substantially limits' a major life

activity is not relevant," however, to a plaintiff's establishing that he or she is "regarded as" having a disability.   29 C.F.R. § 1630.2(j)(2).   See also 29 C.F.R. § 1630.2(g)(3)("[T]he 'regarded as' prong of the definition of disability . . . does not require a showing of an impairment that substantially limits a major life activity or a record of such an impairment.").

To establish the "regarded as" definition of disability, the plaintiff must show "that he or she has been subjected to [discrimination] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."   42 U.S.C. § 12102(3)(A).   The perceived impairment must not be transitory -- "with an actual or expected duration of 6 months nor less" -- nor "minor."   42 U.S.C. § 12102(3)(B).   Congress passed the ADAAA to make it easier for a plaintiff to make out a "regarded as" prong claim by rejecting the narrowed requirement that the Supreme Court proffered in Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999), and by reinstating the "broad view" in School Board of Nassau County v. Arline, 480 U.S. 273 (1987).   Pub. L. No. 110-325, § 2(b)(3), 122 Stat. 3553, 3554.   Sutton v. United Air Lines, Inc. required a plaintiff to establish that the employer believed the plaintiff to have an impairment that substantially limits a major life activity.   See 527 U.S. at 489.   The Supreme Court in School Board of Nassau County v. Arline discussed how Congress "expanded the definition" of "disability"4 under the Rehabilitation Act "[t]o combat the effects of erroneous but nevertheless prevalent perceptions about the handicapped" and thus to prohibit discrimination based on the perception of an impairment.   Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. at 279 (citing Se. Cmty. College v. Davis, 442 U.S. 397, 405-06 n.6 (1979)).   The Supreme Court

_____

4The Supreme Court uses the term "handicapped individual," because that was the term the Rehabilitation Act used at the time.   The definitions of "handicapped individual" that the Supreme Court is discussing, and the current term "disability" are the same.   Compare Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. at 279, with 42 U.S.C. § 12102(1).

reasoned that a person regarded as impaired could be substantially limited in his or her "ability to work as a result of the negative reactions of others to the impairment."   Sch. Bd. of Nassau Cty. v. Arline, 480 U.S. at 283.

The Tenth Circuit discusses the passage of the ADAAA and Congressional abrogation of the Supreme Court's regarded-as-disabled precedent in Adair v. City of Muskogee, 823 F.3d 1297 (10th Cir. 2016).   The Tenth Circuit notes that, now, a "regarded as" impairment "need not limit or even be perceived as limiting a major life activity -- the employer need only regard the employee as being impaired, whether or not the employer also believed that the impairment prevented the employee from being able to perform a major life activity."   Adair v. City of Muskogee, 823 F.3d at 1305-06.   "Unlike pre-ADAAA plaintiffs, an ADAAA plaintiff no longer needs to plead and prove that the actual or perceived impairment 'substantially limited one or more major life activities.'"   Adair v. City of Muskogee, 823 F.3d at 1306 (quoting Mercado v. Puerto Rico, 814 F.3d 581, 588 (1st Cir. 2016)).   Thus, a regarded-as-disabled claim now requires that the plaintiff establish that "(1) he has an actual or perceived impairment, (2) that impairment is neither transitory nor minor, and (3) the employer was aware of and therefore perceived the impairment at the time of the alleged discriminatory action."   Adair v. City of Muskogee, 823 F.3d at 1306.

If the alleged discrimination occurred before January 1, 2009, the ADAAA's effective date, the Tenth Circuit requires a plaintiff to show that the employer "regarded her as having an impairment that substantially limited the major life activity of working."   Baltazar v. Shinseki, 485 F. App'x 941, 944-45 (10th Cir. 2012)(unpublished).   See Equal Emp't Opportunity Comm'n, 853 F.3d 1150, 1155-56 (10th Cir. 2017)(citing Sutton v. United Air Lines, Inc., 527 U.S. at 489).   In Detterline v. Salazar, 320 F. App'x 853 (10th Cir. 2009)(unpublished), the Tenth Circuit stated that, to establish a "regarded as" disability, the

plaintiff must show that (1) the employer mistakenly believes the plaintiff has a physical or mental impairment that substantially limits a major life activity; or (2) the employer mistakenly believes that an existing impairment substantially limits a major life activity when, in fact, the impairment does not result in a limitation.

320 F. App'x at 856 (citing Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1086 (10th Cir. 2008))). "The fact that an employer recognizes an employee's physical restrictions and places him in a position allowing him to work within those restrictions does not, by itself, [however,] show that the employer regarded him as disabled." Detterline v. Salazar, 320 F. App'x at 858. The plaintiff must prove that the employer perceived a disabling impairment under the Rehabilitation Act. See Detterline v. Salazar, 320 F. App'x at 857 (citing McGeshick v. Principi, 357 F.3d at 1151). The court's "focus is on the employer's subjective state of mind: did the employer mistakenly believe that the plaintiff was substantially limited in performing a major life activity?" Justice v. Crown Cork & Seal Co., 527 F.3d at 1086.

### b.    Establishing a Person is "Qualified" Under the Rehabilitation Act.

The ADA defines "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Cf. 45 C.F.R. § 84.3(*l*)(1) (defining a "qualified handicapped person" as "a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question"). Further, "consideration shall be given to the employer's judgment as to what functions of a job are essential." 42 U.S.C. § 1211(8). "Essential functions of the job [are] functions that bear more than a marginal relationship to the job at issue." Adair v. City of Muskogee, 823 F.3d at 1307 (internal quotation marks omitted)(quoting Hawkins v. Schwan's Home Serv., Inc., 778 F.3d 877, 887 (10th Cir. 2015)). To determine if a function is essential, Tenth Circuit considers,

> among other things, (1) the employer's judgment as to which functions are essential; (2) written job descriptions; (3) the time spent performing the particular function; (4) the consequences if the individual cannot perform the function; (5) any collective-bargaining agreement; (6) the work experience of those in the position in the past; and (7) the current work experience of those in similar positions.

Adair v. City of Muskogee, 823 F.3d at 1307 (citing 29 C.F.R. § 1630.2(n)(3)).   If a plaintiff cannot perform an essential job function, he or she is nonetheless still considered a "qualified individual" if: (i) "a reasonable accommodation would have enabled [the plaintiff] to perform his [or her] original job," and (ii) the employer could reassign the plaintiff to an existing, vacant position "to which 'a similarly situated, non-disabled employee' could apply."   Sanchez v. U.S. Dep't of Energy, 870 F.3d 1185, 1199-1200 (10th Cir. 2017)(quoting Koessel v. Sublette Cty. Sheriff's Dep't, 717 F.3d at 745 (10th Cir. 2013)(Tymkovich, J.)).   The plaintiff bears the burden of showing such qualification.   See Koessel v. Sublette Cty. Sheriff's Dep't, 717 F.3d at 743 (citing Henagirv. Utah Dep't of Corr., 587 F.3d 1255, 1262 (10th Cir. 2009)).

### 2.   **Illegal Medical Inquiry Claims Under the Rehabilitation Act.**

Section 504 of the Rehabilitation Act incorporates many of the ADA "Title I's prohibitions on employment discrimination by reference, including § 12112(D)(4)(A)'s medical inquiry prohibition."   Taylor v. City of Shreveport, 798 F.3d 273, 283 (5th Cir. 2015)(footnote omitted).   See 29 U.S.C. § 794(d) ("The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) . . . ."). Accordingly, an employer receiving federal financial assistance or a federal agency "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless

such examination or inquiry is shown to be job-related and consistent with business necessity."

42 U.S.C. § 12112(d)(4)(A).   An employer may, however, "make inquiries into the ability of an

employee to perform job-related functions."   42 U.S.C. § 12112(d)(4)(B).   Requesting "a

prohibited medical examination or inquiry may constitute a form of employment discrimination."

Taylor v. City of Shreveport, 798 F.3d at 282.   See 42 U.S.C. § 12112(d)(1) ("The prohibition

against discrimination as referred to in subsection (a) of this section shall include medical

examinations and inquiries.").

To maintain a prohibited-medical-inquiry claim of discrimination, a plaintiff does not need

to assert that he or she "is an individual with a disability."   Roe v. Cheyenne Mountain Conference

Resort, Inc., 124 F.3d 1221, 1229 (10th Cir. 1997).   See Williams v. FedEx Corp. Servs., 849 F.3d

889, 901 (10th Cir. 2017).   The purpose of bringing such a claim is to prevent employers from

inquiring into whether employees have a disability, so requiring a plaintiff to identify as disabled

as part of the prima facie case "makes little sense."   Griffin v. Steeltek, Inc., 160 F.3d 591, 594

(10th Cir. 1998).   A prima facie case requires the plaintiff to establish: "(1) that he is an employee

of the defendant employer, and (2) that the defendant-employer required him to undergo a medical

examination or made a disability-related inquiry of him."   Williams v. FedEx Corp. Servs., 849

F.3d at 901 (citing Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d at 1229).   The

United States Court of Appeals for the Sixth Circuit has noted that EEOC guidelines define

"medical examination" as "a procedure or test that seeks information about an individual's

physical or mental impairments or health," and discussed factors helpful to this determination:

> (1) whether the test is administered by a health care professional; (2) whether the
> test is interpreted by a health care professional; (3) whether the test is designed to
> reveal an impairment or physical or mental health; (4) whether the test is invasive;
> (5) whether the test measures an employee's performance of a task or measures
> his/her physiological responses to performing the task; (6) whether the test

normally is given in a medical setting; and, (7) whether medical equipment is used.

Bates v. Dura Auto. Sys., Inc., 767 F.3d at 574-75 (quoting EEOC, No. 915.002 Enforcement Guidance: Disability-Related Injuries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA) (2000), 2000 WL 33407171, at *3, ("EEOC Enforcement Guidance")).   The Sixth Circuit has stated that the third factor is "arguably the most critical in this analysis."   Kroll v. White Lake Ambulance Auth., 691 F.3d 809, 819 (6th Cir. 2012).

The employer may avoid liability "by demonstrating that the medical examination or disability-related inquiry was job-related and consistent with business necessity."   Williams v. FedEx Corp. Servs., 849 F.3d at 901 (citing 42 U.S.C. § 12112(d)(4)(A)).   The Tenth Circuit has "recognized that 'courts will readily find a business necessity if an employer can demonstrate that a medical examination or inquiry is necessary to determine whether the employer can perform job-related duties when the employer can identify legitimate, non-discriminatory reasons to doubt the employee's capacity to perform his or her duties.'"   Williams v. FedEx Corp. Servs., 849 F.3d at 902 (quoting Adair v. City of Muskogee, 823 F.3d at 1312).   In Adair v. City of Muskogee, the Tenth Circuit determined that where "an employee has sought workers' compensation benefits based on a potential permanent or temporary physical impairment, an employer has a valid business interest in determining whether the employee is actually able to perform the essential functions of his job," and thus found an evaluation into these essential functions to be "job-related and consistent with business necessity."   823 F.3d at 1313.   In Martin v. Kansas, 190 F.3d 1120 (10th Cir. 1999), overruled on other grounds, Bd. of Trs. of Univ of Ala. v. Garrett, 531 U.S. 356, 373-74 (2001), the Tenth Circuit found that a form that "sought verification of an employee's ability to perform the essential functions of his job, or to begin the process of identifying appropriate and necessary reasonable accommodations for employees of need of such

accommodation," and used to "set[] post assignments and establish[] reasonable accommodations," was job-related and consistent with business necessity.   190 F.3d at 1134.

### 3.   Constructive Discharge Claims Under the Rehabilitation Act.

The Rehabilitation Act also adopts ADA standards for constructive discharge claims, and, thus, "[c]onstructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."   Corley v. Dep't of Veterans Affairs ex rel. Principi, 218 F. App'x 727, 739 (10th Cir. 2007)(unpublished) (internal quotation marks omitted)(quoting Sanchez v. Denver Pub. Sch., 164 F.3d at 534).   The plaintiff must have also resigned to establish a claim for constructive discharge.   See Green v. Brennan, 136 S. Ct. at 1777.   A plaintiff alleging constructive discharge based on disability discrimination under the Rehabilitation Act must also establish: (i) that he or she has a disability as defined under the Rehabilitation Act, see Corley v. Dep't of Veterans Affairs ex rel. Principi, 218 F. App'x at 739 (citing Wells v. Shalala, 228 F.3d 1137, 1146 (10th Cir. 2000)); Lanman v. Johnson Cty., 393 F.3d at 1158), and (ii) that he or she is a qualified individual for the position, see Wells v. Shalala, 228 F.3d at 1146.

When determining whether constructive discharge has occurred, a court must examine the employer's actions objectively.   See, e.g., Yearous v. Niobrara Cty. Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997)(" To determine whether a jury question exists as to the voluntariness of Plaintiffs' respective resignations, we consider the totality of the circumstances under an objective standard.").   "The conditions of employment must be objectively intolerable; the 'plaintiff's subjective views of the situation are irrelevant.'"   Sanchez v. Denver Pub. Sch., 164 F.3d at 534 (quoting Yearous v. Niobrara Cty. Mem'l Hosp., 128 F.3d at 1356).   "Essentially, a plaintiff must show that she had 'no other choice but to quit.'"   Yearous v. Niobrara Cty. Mem'l Hosp., 128

F.3d at 1356 (emphasis in <u>Woodward v. City of Worland</u>)(quoting <u>Woodward v. City of Worland</u>, 977 F.2d 1392, 1401 (10th Cir. 1992)).   Thus, a plaintiff cannot successfully allege constructive discharge where the resignation was voluntary.   <u>See</u>, <u>e.g.</u>, <u>Yearous v. Niobrara Cty. Mem'l Hosp.</u>, 128 F.3d at 1356.   In determining voluntariness, the Tenth Circuit has instructed that courts "consider the totality of the circumstances under an objective standard."   <u>Yearous v. Niobrara Cty. Mem'l Hosp.</u>, 128 F.3d at 1356.   The factors that inform the court's analysis include: "(1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; and (4) whether [the employee] was permitted to select the effective date of resignation."   <u>Parker v. Bd. of Regents of Tulsa Junior Coll.</u>, 981 F.2d 1159, 1162 (10th Cir. 1992).

Typically, constructive discharge claims rest on an allegation of a hostile work environment.   <u>See</u> <u>Premratananont v. S. Suburban Park & Recreation Dist.</u>, 149 F.3d 1191, 1998 WL 211543, at *2 (10th Cir. 1998)(unpublished table opinion).   "A hostile work environment is a workplace 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment."   <u>Dye v. Moniz</u>, 672 F. App'x 836, 840 (10th Cir. 2016)(unpublished).   A constructive discharge claim may also rest on "other types of intolerable working conditions such as retaliatory conduct for making a complaint of discrimination or a failure to promote for discriminatory reasons."   <u>Premratananont v. S. Suburban Park & Recreation Dist.</u>, 1998 WL 211543, at *2 (citations omitted)(citing <u>Woodward v. City of Worland</u>, 977 F.2d at 1402; <u>Irving v. Dubuque Packing Co.</u>, 689 F.2d 170, 171-72 (10th Cir. 1982), <u>repudiated on other grounds by</u> <u>Koch v. City of Hutchinson</u>, 814 F.2d 1489 (10th Cir. 1987)).   "However, '[a] finding of

constructive discharge must not be based on the discriminatory act; there must also be aggravating factors that make staying on the job intolerable.'" <u>Premratananont v. S. Suburban Park & Recreation Dist.</u>, 1998 WL 211543, at *2 (alteration in <u>Premratananont v. S. Suburban Park & Recreation Dist.</u>)(quoting <u>James v. Sears Roebuck</u>, 21 F.3d 989, 992 (10th Cir. 1994)).   For example, "[a] perceived demotion or reassignment to a job with lower status or lower pay may, depending upon the individual facts of the case, constitute aggravating factors that would justify finding of constructive discharge."   <u>James v. Sears Roebuck</u>, 21 F.3d at 993.   In <u>Hunt v. Central Consolidated School District</u>, 951 F. Supp. 2d 1136 (D.N.M. 2013)(Browning, J.), the Court dismissed the plaintiff' claims for constructive discharge, because the complaint did not provide "any facts about discriminatory comments, or other discriminatory harassment relating to the Plaintiff's 'race, color, religion, sex, or national origin.'"   951 F. Supp. 2d at 1215-16 (quoting 42 U.S.C. § 2000e-2(a)(1)).   <u>See also</u> <u>Gerald v. Locksley</u>, 785 F. Supp. 2d at 1119 (dismissing claim of constructive discharge because the plaintiff did not "allege the requisite level of severe working conditions required").   Further, in <u>King v. Salazar</u>, Nos. CIV 05-0575 JB/WDS, CIV 05-0997 JB/WDS, 2009 WL 13007401 (D.N.M. March 2, 2009)(Browning, J.), the Court concluded that the plaintiff's resignation was voluntary and granted the defendant summary judgment on the plaintiff's constructive discharge claim.   <u>See</u> 2009 WL 13007401, at *10-11 (noting that "[a] plaintiff seeking to prove a claim of constructive discharge faces a heavy burden").

Moreover, in cases involving alleged constructive discharge, the general rule is that a reasonable employee must remain and fight discrimination on the job.   <u>E.g.</u>, <u>Derr v. Gulf Oil Co.</u>, 796 F.2d 340, 342-43 (10th Cir. 1986).   There is a presumption that, unless the situation becomes intolerable, it is preferable for the employee to seek redress within the context of the employment relationship.   <u>See</u> <u>Perry v. Harris Chernin, Inc.</u>, 126 F.3d 1010, 1015 (7th Cir. 1997)("[U]nless

conditions are beyond 'ordinary' discrimination, a complaining employee is expected to remain on the job while seeking redress."   (quoting Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996)); Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987)(holding that employee has duty to inform higher management and use available grievance procedures, including the EEOC); Derr v. Gulf Oil Co., 796 F.2d at 342-43 ("We agree with the Fifth Circuit's statement in *Bourque* [v. Powell Elec. Mfg. Co., 617 F.2d 61, 66 (5th Cir. 1980),] that 'society and the policies underlying Title VII will be best served if, wherever possible, unlawful discrimination is attacked within the context of existing employment relationships.'").   The obligation to seek redress is particularly true given the statutory protections from discrimination and retaliation that the Rehabilitation Act, through its incorporation of the ADA, affords.   Cf. Derr v. Gulf Oil Corp., 796 F.2d at 342-43 (discussing Title VII's protections); Bourque v. Powell Elec. Mfg. Co., 617 F.2d at 66 (same).

### 4. Retaliation Claims Under the Rehabilitation Act.

A prima facie case of retaliation requires that the plaintiff demonstrate: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."   Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202 (10th Cir. 2006)(footnote omitted).   A plaintiff alleging retaliation need not establish that he or she meets the Rehabilitation Act's definition of disabled; rather, the plaintiff's "reasonable, good-faith belief that the statute has been violated suffices."   Selenke v. Med. Imaging of Colo., 248 F.3d 1249, 1264 (10th Cir. 2001).   Section 504 of the Rehabilitation Act and the ADA prohibits "discrimination against any individual 'because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1131 (quoting 42 U.S.C. § 12203(a)). See 29 U.S.C. § 794(d) (incorporating ADA standards, including 42 U.S.C. §§ 12201-04, into claims of employment discrimination brought under this section of the Rehabilitation Act). "Because the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), contains essentially the same language as Title VII's provision, 42 U.S.C. § 2000e-3(a), [Title VII precedent] applies in the ADA context as well" and, thus, to the Rehabilitation Act. Proctor v. United Parcel Serv., 502 F.3d at 1208 n.4 (citing Burlington N. & Santa Fe Ry. v. White). See Haynes v. Level 3 Commc'ns, 456 F.3d at 1228 (applying the same elements of a prima facie case to Title VII and to ADA retaliation claims); Lanman v. Johnson Cty., 393 F.3d at 1155-56 (asserting that the shared language, "parallel purposes[,] and remedial structures of the [ADA and of Title VII] support a consistent interpretation").

"Protected activity" refers to activity that the statute protects, such as filing an EEOC claim or other administrative charges. See Proctor v. United Parcel Serv., 502 F.3d at 1208. An adverse employment action "must be 'materially adverse' to the employee's job status. The adverse action must amount to 'a significant change in employment status, such as firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Meiners v. Univ. of Kan., 359 F.3d 1222, 1230 (10th Cir. 2004)(citation omitted)(first quoting Sanchez v. Denver Pub. Sch., 164 F.3d at 533; then quoting Aquilino v. Univ. of Kan., 268 F.3d 930, 934 (10th Cir. 2001)). Close temporal proximity between the protected activity and the adverse action "is sufficient to allow an inference [of] a causal connection" between them. Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1202 (allowing such inference where there were twenty-four days between the protected activity

and adverse action)(citing <u>Anderson v. Coors Brewing Co.</u>, 181 F.3d 1171, 1179 (10th Cir. 1999)(noting that a six-week period establishes this rebuttable inference but a three-month period does not)).

### 5.     Direct Evidence of Discrimination.

A plaintiff must support his or her case with either direct or circumstantial evidence.   <u>See Davidson v. Am. Online, Inc.</u>, 337 F.3d 1179, 1189 (10th Cir. 2003).   "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'"   <u>Shorter v. ICG Holdings, Inc.</u>, 188 F.3d 1204, 1207 (10th Cir. 1999)(alterations in <u>Shorter v. ICG Holdings, Inc.</u>)(quoting Black's Law Dictionary 460 (6th ed. 1990)), <u>overruled on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 98-102 (2003). Moreover, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."   <u>Danville v. Reg'l Lab Corp.</u>, 292 F.3d 1246, 1249 (10th Cir. 2002).   "A statement that can plausibly be interpreted two different ways -- one discriminatory and the other benign -- does not directly reflect illegal animus, and, thus, does not constitute direct evidence." <u>Hall v. U.S. Dep't of Labor, Admin. Review Bd.</u>, 476 F.3d 847, 855 (10th Cir. 2007)(internal quotation marks omitted)(quoting <u>Patten v. Wal-Mart Stores E., Inc.</u>, 300 F.3d 21, 25 (1st Cir. 2002)).   "When a plaintiff alleges that discriminatory comments constitute direct evidence of discrimination, . . . the plaintiff 'must demonstrate a nexus exists between [the] allegedly discriminatory statements and the . . . decision to terminate her.'"   <u>Perry v. Woodward</u>, 199 F.3d 1126, 1134 (10th Cir. 1999)(alteration in <u>Perry v. Woodward</u>)(quoting <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 531 (10th Cir. 1994)).   "Direct evidence is that which demonstrates 'a specific link between the alleged discriminatory animus and the challenged [employment] decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated [the

employer's] decision' to take the adverse employment action." Deneen v. Nw. Airlines, Inc., 132 F.3d 431, 436 (8th Cir. 1998)(alterations in Deneen v. Nw. Airlines, Inc.)(quoting Thomas v. First Nat'l Bank of Wynne, 111 F.3d 64, 66 (8th Cir. 1997)). "Statements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements." Hall v. U.S. Dep't of Labor, Admin. Review Bd., 476 F.3d at 855 (citing Shorter v. ICG Holdings, Inc., 188 F.3d at 1207).

### 6. Burden-Shifting Under McDonnell Douglas.

In the absence of direct evidence, a plaintiff alleging discrimination under the Rehabilitation Act may rely upon the burden-shifting framework that the Supreme Court, in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)("McDonnell Douglas"), provided. E.g., Pushkin v. Regents of Univ. of Colo., 658 F.2d 1372, 1387 (10th Cir. 1981). Under the McDonnell Douglas framework, once a plaintiff has made out a prima facie Rehabilitation Act case, the burden shifts to the defendant to show either that "the plaintiff was not . . . otherwise qualified" or that there is a nondiscriminatory reason for the adverse action. Pushkin v. Regents of Univ. of Colo., 658 F.2d at 1387. See also Argo v. Blue Cross & Blue Shield of Kan., 452 F.3d at 1202; Mitchell v. City of Wichita, 140 F. App'x 767, 777 (10th Cir. 2005)(Browning, J.)(unpublished). "Upon the employer's articulation of legitimate, nondiscriminatory reasons, the presumption of discrimination established by the prima facie case 'simply drops out of the picture.'" Kelley v. City of Albuquerque, 375 F. Supp. 2d 1183, 1210 (D.N.M. 2004)(Browning, J.)(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)). Further, "the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment." St.

Mary's Honor Ctr. v. Hicks, 509 U.S. at 509.  "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon these beliefs."  Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002).

Once the defendant produces a legitimate, nondiscriminatory explanation for the defendant's action, to survive summary judgment, the plaintiff must establish a genuine question of material fact whether the defendant's explanation is pretextual.  See Pushkin v. Regents of Univ. of Colo., 658 F.2d at 1387.  To establish a genuine issue of material fact as to pretext, a plaintiff must demonstrate that the defendant's "proffered non-discriminatory reason is unworthy of belief."  Randle v. City of Aurora, 69 F.3d 441, 453 (10th Cir. 1995).  To meet this standard, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997)(internal quotation marks omitted)(quoting Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951-52 (3d Cir. 1996)). "If a plaintiff advances evidence upon which a factfinder could conclude that the defendant's allegedly nondiscriminatory reasons for the employment decisions are pretextual, the court should deny summary judgment."  Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d at 1134.  "[A] plaintiff's prima facie case [of discrimination], combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

Consequently, "once a plaintiff presents evidence sufficient to create a genuine factual dispute regarding the veracity of a defendant's nondiscriminatory reason, we presume the jury could infer that the employer acted for a discriminatory reason and must deny summary judgment." Bryant v. Farmers Ins. Exch., 432 F.3d 1114, 1125 (10th Cir. 2005).

> Debunking one of the employer's explanations defeats the case for summary judgment "only if the company has offered no other reason that, *if that reason stood alone* (more precisely if it did not have support from the tainted reason), would have caused the company to take the action of which the plaintiff is complaining."

Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1310 (10th Cir. 2005)(emphasis in Russell v. Acme-Evans Co.)(quoting Russell v. Acme-Evans Co., 51 F.3d 64, 69 (7th Cir. 1995)).

**7.    Exhaustion of Administrative Remedies.**

Until recently, the Tenth Circuit remained steadfast that "[t]he exhaustion of administrative remedies is a jurisdictional prerequisite to instituting an action in federal court under both the Rehabilitation Act and Title VII." Showalter v. Weinstein, 233 F. App'x 803, 804 (10th Cir. 2007)(unpublished)(citations omitted).   The Tenth Circuit recently overruled this precedent, however, holding "that a plaintiff's failure to file an EEOC charge regarding a discrete employment incident merely permits the employer to raise an affirmative defense of failure to exhaust but does not bar a federal court from assuming jurisdiction over a claim." Lincoln v. BNSF Ry., 900 F.3d 1166, 1185 (10th Cir. 2018).   This holding rested, in part, on 42 U.S.C. § 2000e-5(f)(3)'s plain language.   See Lincoln v. BNSF Ry., 900 F.3d at 1184-85.   Accordingly, the holding also applies to Rehabilitation Act precedent requiring exhaustion, because, the Rehabilitation Act incorporates "[t]he remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16), including the application of sections 706(f) through 706(k) (42 U.S.C. 2000e-5(f) through (k))" for violations of § 501, 29 U.S.C. § 794a(a)(1),

and incorporates "[t]he remedies procedures, and rights set forth in title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.)(and in subsection (e)(3) of section 706 of such Act (42 U.S.C. 2000e-5), applied to claims of discrimination in compensation)" for violations of §504 "by any recipient of Federal assistance or Federal provider of such assistance,"   29 U.S.C. § 794a(a)(2). See also Woodman v. Runyon, 132 F.3d 1130, 1341 (10th Cir. 1997)(stating that "[t]he Rehabilitation Act encompasses [Title VII's] exhaustion requirement").   Accordingly, federal courts in the Tenth Circuit now have jurisdiction over Rehabilitation Act claims for which a plaintiff has not exhausted administrative remedies, although the failure to exhaust may be grounds for a motion to dismiss.   See Lincoln v. BNSF Ry., 900 F.3d at 1186.   Exhaustion of administrative remedies is not always required, however, under the Rehabilitation Act.   See McGeshick v. Principi, 357 F.3d at 1149 ("Exhaustion of administrative remedies is not necessary to sustain a Rehabilitation Act claim.").

The United States Department of Health and Human Services regulations regarding the procedures under § 504 provide that "[t]he procedural provisions applicable to title VI of the Civil Rights Act of 1964 apply to this part," and that the "procedures are found in §§ 80.6 through 80.10 and Part 81 of this Title."   45 C.F.R. § 84.61.   See also 45 C.F.R. § 84.1 ("The purpose of this part is to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance.").   These procedures create a public administrative remedy, providing for the "suspension or termination of or refusal to grant or to continue Federal financial assistance."   45 C.F.R. § 80.8(a).   Accordingly, in 1981, the Tenth Circuit determined that a non-federal-employee plaintiff need not exhaust administrative remedies to bring a § 504 claim, as the administrative redress -- "suspension or termination of the federal assistance" -- "would be an empty remedy


indeed for the plaintiff herein who was seeking to continue his residency program." Pushkin v. Regents of the Univ. of Colo., 658 F.3d at 1381. The Tenth Circuit therefore held that "under s 504 of the Rehabilitation Act the plaintiff is not compelled to pursue a remedy which is irrelevant to his particular need." Pushkin v. Regents of Univ. of Colo., 658 F.2d at 1382. The Tenth Circuit reiterated this holding the following year by holding that the plaintiff class did not need to exhaust its state administrative remedy, because the "administrative process provided in this case poses both quality of relief and time lapse problems to the class." N.M. Ass'n for Retarded Citizens v. New Mexico, 678 F.2d 847, 851 (10th Cir. 1982). Accordingly, there is no exhaustion requirement for a private person to bring a § 504 Rehabilitation Act claim against an employer that receives federal funding. See McGeshick v. Principi, 357 F.3d at 1149; Pushkin v. Regents of Univ. of Colo., 1380-82; Werback v. Univ. of Ark., No. 15-9273-CM, 2016 WL 3522042, at *1 (D. Kan. June 28, 2016)(Murguia, J.)("Neither does Section 504 independently require exhaustion of administrative remedies."); Ombe v. Martinez, No. 14-CV-00763 RB/KBM, 2015 WL 13662809, at *2 (D.N.M. May 28, 2015)(Brack, J.)("However, exhaustion of administrative remedies is not a mandatory prerequisite for a non-federal employee filing suit under section 504 of the [Rehabilitation] Act.").

> "[A]ny person aggrieved" by a violation of § 504 may seek relief under § 505(a)(2), which permits plaintiffs to invoke "[t]he remedies, procedures, and rights" set forth in Title VI of the Civil Rights Act of 1964. Because exhaustion of administrative remedies is not a prerequisite to a Title VI claim, it is well settled that it is not a prerequisite to a private cause of action under § 504(a)(2).

Ryan v. Shawnee Mission Unified Sch. Dist. No. 512, 437 F. Supp. 2d 1233, 1254 (D. Kan. 2006)(Lungstrum, J.)(quoting 29 U.S.C. § 794(a)). See Taylor v. City of Shreveport, 798 F.3d at 284 ("Although a plaintiff must exhaust his or her administrative remedies before pursuing a Rehabilitation Act claim against a federal *agency*, it need not do so before suing a federal *grantee*."

(emphasis in original)).

## ANALYSIS

The Court will dismiss Rowley's First, Second, and Third causes of action against the private defendants, the state defendants in their official capacities, the Eighth Judicial District, Taos County, and the Taos County Sheriff's Office.   The Court will also dismiss Rowley's Fourth cause of action for failing to identify the relevant portion of the ASFA.   Further, the Court will dismiss Rowley's Fifth Cause of Action because Rowley failed to allege a qualifying disability. Next, the Court will dismiss the Sixth Cause of Action because Rowley failed to identify any agreement or concert among the defendants.   Finally, the Court declines to appoint counsel to Rowley or to serve the defendants at this time.

## I.   THE COURT WILL DISMISS THE FIRST THROUGH THIRD CAUSES OF ACTION.

Rowley asserts the First Cause of Action "Against All Defendants For Violations of The Fourteenth Amendment to the United States Constitution."   Complaint at 47.   Rowley asserts the Second Cause of Action for violation of their First Amendment rights "Against HSD/CYFD and Taos County/TCSO *Actors*."   Complaint at 63 (emphasis added).   It is not clear whether Rowley is asserting her First Amendment claims solely against the employees of the NMHSD, the State of New Mexico CYFD, Taos County, and the TCSO, or if Rowley is also asserting those claims against the State Departments, Taos County and the TCSO.   Rowley asserts the Third Cause of Action for violation of their civil rights "Against HSD/CYFD and Taos County/TCSO *Defendants*."   Complaint at 65 (emphasis added).   It is not clear whether Rowley is asserting the civil rights claims solely against the employees of the State of New Mexico Human Services Department, the State of New Mexico Children, Youth and Families Department, Taos County,

and the Taos County Sheriff's Office, or if Rowley is also asserting those claims against the State Departments, Taos County and the Taos County Sheriff's Office.

The First, Second and Third Causes of Action in the Complaint fail to state civil rights claims for relief under 42 U.S.C. § 1983.  To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must assert acts by government officials acting under color of state law that result in a deprivation of rights that the Constitution secures.  See 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Under rule 12(b)(6), the court must accept all well-pled factual allegations, but not conclusory, unsupported allegations, and may not consider matters outside the pleading.  See Twombly, 550 U.S. at 555; Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989).

A.      PRIVATE DEFENDANTS.

Rowley names the Taos News, its owner Robin Martin, its editor Staci Matlock, the Sagebrush Inn, its former owners James Haimson and Jared Steinberg, and its current owner JP Taos LLC, as defendants (collectively "the Private Defendants").  If Rowley intends the First Cause of Action to be a § 1983 action against the Private Defendants, the Court must dismiss the First Cause of Action against the Private Defendants without prejudice for failure to state a claim upon which relief can be granted, because a plaintiff asserting a § 1983 claim must allege that the person who deprived the plaintiff of that right acted under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  Rowley does not allege any facts showing that the Private Parties acted under color of state law.  Consequently, Rowley has not stated a claim under § 1983 in the First Cause of Action against the Private Parties.

- 45 -

## B.     STATE OF NEW MEXICO DEPARTMENTS AND STATE OFFICIALS.

Rowley names the "State of New Mexico Human Services Department" and the "State of New Mexico Children, Youth and Families Department" as Defendants.   Complaint ¶ 4, at 3. The NMHSD and the CYFD are State of New Mexico agencies.   Rowley also names several employees and former employees as Defendants in their "official capacity."   Complaint at 1. Accordingly, the claims against them are claims against the State of New Mexico. See Ashcroft v. Iqbal, 556 U.S. at 676; Bd. of Cty. Comm'rs v. Brown, 520 U.S. at 403; Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. at 689; Barney v. Pulsipher, 143 F.3d at 1307-08. Section "1983 is a remedial vehicle for raising claims based on the violation of constitutional rights." Brown v. Buhman, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016).   It does not abrogate the State's sovereign immunity, and neither the State, its agencies, or its programs qualify as "persons" under § 1983.   See Will v. Michigan Dep't of State Police, 491 U.S. 58, 67, 71 (1989); Wood v. Milyard, 414 F. App'x 103, 105 (10th Cir. 2011)(unpublished opinion). The State is not a "person" within 42 U.S.C. § 1983's meaning and, therefore, there is no remedy against the State under § 1983.   Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997). Rowley's § 1983 claims against the NMHSD, the CYFD, and their employees in their official capacity, therefore, fail to state a claim, and the Court will dismiss them.   See Will v. Michigan Dep't of State Police, 491 U.S. at 63-64.

## C.     EIGHTH JUDICIAL DISTRICT ATTORNEY.

Rowley's First Cause of Action asserts a claim pursuant to 42 U.S.C. § 1983 against Mr. Gallegos.   The Complaint alleges that Mr. Gallegos initiated a prosecution, presented the State's case, and evaluated evidence.   The § 1983 count against Mr. Gallegos does not state a claim, and the Court will dismiss the claim against him, because prosecutors are entitled to immunity in the

- 46 -

performance of their prosecutorial functions.   See Imbler v. Pachtman, 424 U.S. 409, 430 (1976).

The Court will, therefore, dismiss the claim against Gallegos.

      D.     **TAOS COUNTY.**

      Rowley alleges that the "Defendants developed and maintained customs, policies, and

practices that deprived Santana of constitutional rights."   Complaint ¶ 147, at 48.   Rowley has

not alleged facts showing that a Taos County policy or custom was a motivating force behind the

alleged constitutional violations, which is necessary to state plausibly a claim against Taos County

under § 1983.   See Myers v. Okla. Cty. Bd. of Cty. Comm'rs, 151 F.3d at 1318 (citing Monell,

436 U.S. at 694). Accordingly, the Court will dismiss Rowley's claims for municipal liability

against Taos County.   See Twombly, 550 U.S. at 555 (holding that the court must accept all well-

pled factual allegations, but not conclusory, unsupported allegations), 570 (stating that a plaintiff

must allege "enough facts to state a claim to relief that is plausible on its face").

      E.     **TCSO.**

      The Court dismisses the claims against the Taos County Sheriff's Office, because it is not

a separate suable entity.   "Generally, governmental sub-units are not separate suable entities that

may be sued under § 1983."   Hinton v. Dennis, 362 F. App'x. 904, 907 (10th Cir. 2010)(citing

Martinez v. Winner, 771 F.2d 424, 444 (10th Cir. 1985) (holding that City and County of Denver

would remain as a defendant and dismissing complaint as to the City of Denver Police Department

because it is not a separate suable entity).   Because the Taos County Sheriff's Office is not a

separate suable entity from Taos County, the Court dismisses the claims against the Taos County

Sheriff's Office.

**II.     THE COURT WILL DISMISS THE FOURTH CAUSE OF ACTION --
          VIOLATION OF THE ADOPTION AND SAFE FAMILIES ACT.**

The Fourth Cause of Action in the Complaint asserts that the NMHSD and CYFD "violat[ed] the Adoption and Safe Families Act." Complaint at 67.   The ASFA amends many sections of the Social Security Act, 42 U.S.C. § 1305, and other Acts, regarding requirements for proceedings, foster care, notice of reviews and hearings with opportunity to be heard, parent locator service, criminal record checks for prospective foster and adoptive parents, documentation of efforts for adoption or location of a permanent home, adoption incentive payments, state plans for child welfare services, and other topics.   See Pub. L. No. 105-89, 111 Stat. 2115 (November 19, 1997)(amending the following sections of the Social Security Act: 403, 422, 430, 431, 432, 453, 471(a), 472, 474, 475, 422, 1130, inserting language after sections 473 and 477, adding section 479A; amending section 251 of the Balanced Budget and Emergency Deficit Control Act of 1985; amending section 314 of the Congressional Budget Act of 1974; amending section 13712 of the Omnibus Budget Reconciliation Act of 1993).   Rowley alleges only that: "Contrary to the ASFA, CYFD/HSD: prevented Santana from her interacting with her family, failed to reunite her with her family, and failed to keep Santana safe."   Complaint ¶ 225, at 67.   Rowley does not identify which of the many specific provisions of the ASFA the NMHSD and CYFD allegedly violated.   A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."   Twombly, 550 U.S. at 555.   Because Rowley has not identified the specific provisions of the ASFA that the NMHSD and CYFD allegedly violated, Rowley has not given the Defendants fair notice of the claims against them.   Rowley's ASFA claims do not state a claim and will be dismissed.

### III.    THE COURT WILL DISMISS ROWLEY'S FIFTH CAUSE OF ACTION -- VIOLATION OF THE ADA AND SECTION 504 OF THE REHABILITATION ACT.

The Fifth Cause of Action in the Complaint asserts claims against "HSD/CYFD, Taos County/TCSO, and DA Gallegos for Violations of Section 504 of the Rehabilitation Act and the Americans with Disabilities Act."   Complaint at 67.   The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity."   42 U.S.C. § 12132.   To prove an ADA violation, a plaintiff must establish: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability."   Hargrave v. Vermont, 340 F.3d at 34-35.   On Rowley's ADA claims, Rowley alleges only that: (i) "Defendants . . . den[ied] [Rowley and Santana] the opportunity to fully participate [in] . . . programs"; (ii) "Defendants HSD/CYFD denied Santana's medical and behavioral health care"; and (iii)

> Defendants . . . fail[ed] to respond to calls for help; fail[ed] to provide appropriate accommodations . . . treating Mom as less of a person based on disability increasingly targeting Mom for harassment and prosecution as Mom's disability progresses and knowingly exacerbating those disabilities by their intentional, purposeful, and coordinated actions to deprive Mom of constitutional rights.

Complaint ¶¶ 230-232, at 68.

The ADA also provides that, for the purposes of applying the ADA to providers of public accommodations, "discrimination" includes

> failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless

- 49 -

the entity can demonstrate that making such modifications would fundamentally
alter the nature of such goods, services, facilities, privileges, advantages, or
accommodations.

42 U.S.C. § 12182(b)(2)(A)(ii).   Accordingly, the statute implicates three inquiries: (i) "whether

the requested modification is 'reasonable'"; (ii) "whether it is 'necessary' for the disabled

individual"; and (iii) "whether it would 'fundamentally alter the nature of' the [service being

provided]."   PGA Tour, Inc. v. Martin, 532 U.S. at 683, n.38 (quoting 42 U.S.C. §

12182(b)(A)(ii)).   The Plaintiffs' allegations again, however, fall short of establishing all

elements of an ADA claim.   Rowley does not allege: (i) a qualifying disability; (ii) that Rowley

requested a modification in policies, practices, or procedures; or (iii) that such a request was

reasonable. Because Rowley "fail[s] to set forth sufficient facts to raise a plausible inference,"

Ashcroft v. Iqbal, 556 U.S. at 677-78, that the Defendants are liable for the alleged ADA violations,

the Court concludes that Rowley's ADA claim is insufficient and does not state a claim upon which

relief can be granted.

Section 504 of the Rehabilitation Act states: "No otherwise qualified individual with a

disability . . . shall, solely by reason of her or his disability, be excluded from the participation in,

be denied the benefits of, or be subjected to discrimination under any program or activity receiving

Federal financial assistance . . . ." 29 U.S.C. § 794(a).

The term "disability" means --

**(A)**      except as otherwise provided in subparagraph (B), a physical or mental
impairment that constitutes or results in a substantial impediment to employment;

or

**(B)**      for purposes of sections 701, 711, and 712 of this title and subchapters II,
IV, V, and VII, the meaning given it in section 12102 of Title 42.

- 50 -

29 U.S.C. § 794(9).   Rowley refers to their "disability," and their daughter's "behavioral health care" and "diagnoses of Depression and Oppositional-Defiant Disorder," but does not allege that either Rowley or Santana has a disability as the Rehabilitation Act defines that term.   Complaint ¶¶ 230-232, at 68.   Because Rowley "fail[s] to set forth sufficient facts to raise a plausible inference," Ashcroft v. Iqbal, 556 U.S. at 677-78, that the Defendants are liable for the alleged Rehabilitation Act violations, the Court concludes that Rowley's Rehabilitation Act claim is insufficient and does not state a claim upon which relief can be granted.

## IV.   THE COURT DISMISSES THE SIXTH CAUSE OF ACTION -- CONSPIRACY TO VIOLATE CIVIL RIGHTS.

The Sixth Cause of Action in the Complaint asserts a claim pursuant to 42 U.S.C. § 1985(3) "Against all Defendants."   Complaint at 68.   To state a valid claim for conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998)(discussing conspiracy under § 1983).   "[M]ere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).   Here, Rowley alleges:

> Plaintiff believes the elements of conspiracy have been set forth in previous sections and does not wish to vex the court with further repetition.   At the minimum: CYFD/HSD actors collaborated amongst themselves to deny Santana life-saving medical and behavioral healthcare and deny her right to safety in their care; HSD/CYFD and Taos County/TCSO conspired to separate Santana from Mom, conceal the facts and circumstances of Santana's death, and promulgate a false narrative regarding the same; DA Gallegos colluded with HSD/CYFD and with Taos County/TCSO in the prosecutions and deprivations of Santana and Mom; HSD/CYFD collaborated with the Sagebrush Inn to deny Santana safety and protection from workplace abuse, ensuring her continued experience of that abuse; HSD/CYFD, Taos County/TCSO, and the Taos News conspired to publicly publish Santana and Mom's confidential information.

Complaint ¶ 237, at 69.   Conclusory allegations that the Defendants collaborated, conspired, or colluded, without supporting factual allegations "tending to show agreement and concerted action," are not sufficient to state a claim for conspiracy.   Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983)(discussing conspiracy under § 1983).   The Court has reviewed the entire Complaint and has not found any factual allegations tending to show agreement and concerted action between the Defendants.   Thus, in the absence of allegations of "specific facts showing an agreement and concerted action amongst the defendants," the Sixth Cause of Action does not state a claim under § 1985(3).   Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). Accordingly, the Court dismisses the Sixth Cause of Action for failure to state a claim that is cognizable pursuant to § 1985(3).

## V.     **MOTION TO APPOINT COUNSEL.**

Rowley asks the Court for a fifth time to appoint counsel, because Plaintiff is "ever less capable to [amend their Complaint]."   Response at 1-2.   "[C]ivil litigants have no right to counsel."   Witmer v. Grady County Jail, 483 F. App'x. 458, 462 (10th Cir. 2012)(unpublished). The statute governing proceedings in forma pauperis provides that the "court may request an attorney to represent any person unable to afford counsel."   28 U.S.C. § 1915(e)(1).   "Factors to be considered in deciding whether to appoint counsel [in a civil case] include the merits of the claims, the nature of the factual issues raised in the claims, the litigant's ability to present the claims, and the complexity of the legal issues raised by the claims."   Spencer v. City of Cheyenne, 1 F. App'x. 863, 865 (10th Cir. 2001)(unpublished).   When a plaintiff is proceeding pursuant to 28 U.S.C. § 1915, "[t]he burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."   Hill v. SmithKline Beecham Corp.,

393 F.3d 1111, 1115 (10th Cir. 2004). The Court cannot require an unwilling attorney to represent an indigent litigant in a civil case. See Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296, 296 (1989). Rowley has not convinced the Court that there is sufficient merit to the claims in this case to warrant the appointment of counsel. Consequently, the Court denies Rowley's motion to appoint counsel.

## VI.   SERVICE ON DEFENDANTS.

Section 1915 provides that the "officers of the court shall issue and serve all process, and perform all duties in [proceedings in forma pauperis]." 28 U.S.C. § 1915(d). The Court will not order service at this time, because the Complaint does not provide the addresses of the Defendants. The Court will order service if Rowley files a motion for service which includes the address of each remaining Defendant.

IT IS ORDERED that: (i) the claims pursuant to 42 U.S.C. 1983 against Defendants Taos News, its owner Robin Martin, its editor Staci Matlock, the Sagebrush Inn, its former owners James Haimson and Jared Steinberg, and its current owner JP Taos LLC, are dismissed without prejudice; (ii) the § 1983 claims against Defendants State of New Mexico Human Services Department, the State of New Mexico Children, Youth and Families Department, and their current and former employees Rowley named as Defendants in their official capacities, are dismissed without prejudice; (iii) the § 1983 claims against Defendant Eighth Judicial District Attorney Donald Gallegos are dismissed without prejudice; (iv) the § 1983 claims against Defendant Taos County are dismissed without prejudice; (v) the claims against Defendant Taos County Sheriff's Office are dismissed without prejudice; (vi) the claims against the NMHSD and CYFD for violations of the Adoption and Safe Families Act are dismissed without prejudice; (vii) the claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, are dismissed without

prejudice; (viii) the claims pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, are dismissed without prejudice; (ix) the conspiracy to violate civil rights claims against all Defendants pursuant to 42 U.S.C. § 1985(3) are dismissed without prejudice; and (x) Rowley's request to appoint counsel is denied.

_____
UNITED STATES DISTRICT JUDGE

*Parties*:

H.L. Rowley
Taos, New Mexico

      *Plaintiff pro se*